UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| In re: | |
|---|---|
| Deborah Faye Parker | Case No. 21-12073-KHK |
| Debtor | (Chapter 7) |
| Janet M. Meiburger, Chapter 7 Trustee<br><br>Plaintiff<br><br>v.<br><br>DGP Holdings, LLC and<br>Gregory Parker<br><br>Defendants | AP No. 22-01044-KHK |

## MEMORANDUM OPINION

The above-captioned adversary proceeding, and in particular, Count III[1] of the Trustee's Complaint against DGP Holdings, LLC and Gregory P. Parker, was before the Court for an evidentiary hearing on November 3, 2023. Count III seeks to dissolve DGP Holdings, LLC under Va. Code §13.1-1047. Docket No. 1, pg. 5. At the conclusion of the hearing, the Court took the matter under advisement and the parties were instructed to submit briefing on whether Virginia law allowed for the dissolution of DGP Holdings, LLC under the circumstances of this case. The Defendants submitted their Brief on November 30, 2023 (Docket No. 64) ("Defendants' Brief"). The Trustee filed her response on December 14, 2023 (Docket No. 67) ("Trustee's Brief") and the Defendants filed their reply thereto on December 29, 2023 (Docket No. 69) ("Defendants' Reply"). Upon consideration of the Briefs, argument of counsel and the evidence in this case, and for the reasons that follow, the Court will enter judgment in favor of the Trustee on Count III and will appoint a liquidating trustee to dissolve DGP Holdings, LLC.

---

[1] Counts I and II of the Complaint were previously disposed of on summary judgment. Docket No. 16.

1

The following constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 52, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure Fed. R. Bankr. P. 7052.

### Jurisdiction and Venue

The Court has subject matter jurisdiction over this Adversary Proceeding under 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia, dated August 15, 1984. Count III of the Complaint constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Additionally, by virtue of the Initial Scheduling Order in this matter, the parties are deemed to have consented to final judgment herein. *See* Docket No. 4, paragraph 5.

### Findings of Fact

In 1990, Mr. and Mrs. Parker acquired a duplex property located at 2022-2024 Kenwood Blvd. SE, Roanoke, VA 24013. In October of 2019, the Debtor and her husband formed a limited liability company called DGP Holdings, LLC ("DGP") and transferred the property to the LLC. As noted by the District Court in its December 18, 2023 Order Affirming this Court's Supplemental Summary Judgment Order (Docket No. 68), DGP rents the duplex units to third-party tenants and employs a management company to collect rents, pay expenses, and deposit profits into a DGP-controlled bank account at Atlantic Union Bank. Under Judge Kenney's Order Granting Summary Judgment (Docket No. 16), the management company was ordered to "disburse 50% of the owner distribution every month directly to the Trustee and shall send a copy of the owner statement to the Trustee every month."

DGP does not have an operating agreement. According to the company's Articles of Organization, the stated purpose of the entity is to conduct any business in a lawful manner. Defendants' Brief, pgs. 11-12.

Prior to the hearing on this matter and the filing of the Briefs, the parties agreed that the Debtor had a 50% interest in DGP. Indeed, the Debtor herself scheduled a 50% interest on Schedule A. Judge Kenney's Summary Judgment Order also recognizes the same. Docket No. 16.

Once the Debtor filed for bankruptcy Mr. Parker, a co-defendant herein, continued to operate DGP and withheld from the Trustee funds representing post-petition net distributions of DGP to which the estate was entitled. The Trustee thereafter initiated this adversary proceeding seeking 1) an accounting of the income and expenses of the LLC from the petition date onward under Va. Code § 13.1-1028.B ("Count I"), 2) turnover of the bankruptcy estate's share of the post-petition distributions from the account ("Count II"), and 3) dissolution of DGP under Va. Code §§ 13.1-1046, -1047 ("Count III"). Thereafter the Trustee sought and obtained summary judgment on Counts I and II and obtained supplemental summary judgment with respect to additional post-petition distributions to which the estate was entitled but which were also improperly withheld by Mr. Parker. Docket Nos. 16, 29. The Supplemental Summary Judgment Order was upheld by the District Court on appeal. Docket No. 68.

During the life of the main bankruptcy case, Mr. Parker apparently made managerial decisions for DGP, including the decision of whether to renew leases and whether to increase the rent. The Trustee's consent was not sought with respect to these decisions. Mr. Parker testified to these facts during the evidentiary hearing.

Ultimately, Mr. Parker wants to continue DGP in its current form and does not want to sell the property. Conversely, the Trustee seeks to dissolve DGP due to Mr. Parker's misappropriation and *ultra vires* managerial decisions.

**Conclusions of Law**

Count III seeks dissolution of DGP under Va. Code §§ 13.1-1046, -1047, which provides in relevant part, that the Court "…may decree dissolution of a limited liability company if it is not reasonably practicable to carry on the business in conformity with the articles of organization and any operating agreement." The question before the Court is not one that merely inquires into any past bad acts on the part of Mr. Parker, but is instead, whether present circumstances show that it is not reasonably practicable to continue to operate the business in conformity with the Articles of Organization and any operating agreement. *Dunbar Grp., LLC v. Tignor*, 267 Va. 361, 367, 593 S.E.2d 216, 219 (2004). The Court must begin by making a finding as to the purpose of DGP, which under the circumstances can only be derived

3

from its Articles of Organization. Based on that document, the Court finds that the purpose of DGP is to conduct any business in a lawful manner. The Court next turns to the arguments and cited authorities of the Trustee and the Defendants as to the propriety of the dissolution of the LLC and whether it is reasonably practicable for DGP to carry on its business in a lawful manner.

The Parties' Positions and Authorities:

The Trustee argues that the deadlock between her and Mr. Parker interferes with the ongoing operation of the LLC in accordance with its purpose of operating a lawful business. The Trustee contends that the business only appears to be operating lawfully, but in reality, any managerial decision requires majority consent, and Mr. Parker has therefore been operating the company illegally. In support thereof, the Trustee cites to Va. Code § 13.1-1022(C) which provides that,

> Unless otherwise provided in this chapter, in the articles of organization, or in an operating agreement, any action required or permitted to be taken by the members of a limited liability company may be taken upon a majority vote of the members.

In particular, the Trustee asserts that Mr. Parker unilaterally and in *ultra vires* fashion decided "whether to renew the leases and whether to increase the rent" for the leased units in the property. Trustee's Response, pg. 4 (citing Transcript of November 3, 2023 - Parker Testimony (Exhibit A) at pg.18:14-24). The Trustee also argues that Mr. Parker's repeated misappropriation of the estate's share of distributions is also grounds for dissolution. In support thereof Trustee cites to *Wilkinson v. St. Pierre*, 97 Va. Cir. 21, 2017 Va. Cir. LEXIS 319 (Circuit Court of Chesterfield County, Virginia, May 3, 2017). In that case the Circuit Court of Virginia, Chesterfield County, denied a demurrer where the complaint seeking dissolution of the relevant entity asserted the "Defendants are 'looting the assets' of the LLCs and 'treating those assets as their own.'" The court in that case noted that,

> [a]lthough Wilkinson does not allege what specific terms, if any, of any articles of organization or operating agreement are not being complied with, the Court can draw the reasonable inference that it would not be practicable to carry on the business of these LLCs if the factual allegations are proved.

*Wilkinson v. St. Pierre*, 97 Va. Cir. 21 (2017). While the case at bar also involves one member wrongfully withholding assets (funds) from another, that issue appears to have been remedied by Judge Kenney's Order

4

Granting Summary Judgment that required the management company to issue funds attributable to the estate's interest in the LLC directly to the Trustee.

Defendants argue that the Trustee's assertion that the LLC must be able to carry on business in a reasonably practical manner in accordance with Virginia statutes is patently false. Defendants assert that there is no need to look to the statute when it refers to the operating agreement and articles of organization. The Defendants maintains that the LLC is operating in accordance with its only stated purpose-- to operate a lawful business. In support thereof, the Defendants cite *Dunbar Group., LLC, LLC v. Tignor*, 593 S.E.2d 216, 267 Va. 361 (2004). In that case, the Virginia Supreme Court reversed the lower court's dissolution of a two-member LLC where one of the members had been expelled and the business was still able to carry on its business "in accord with its articles of incorporation and any operating agreement." Defendants also argue that Dunbar holds that past bad acts from LLC members, if remedied at present, are not grounds for dissolution. In support of this position, Defendants also cite an Arizona Bankruptcy Court case, *In re Ehmann*, 334 B.R. 437 (Bankr. Ariz. 2005) for the proposition that present circumstances must exist for dissolution, not just past bad acts. In that case, the bankruptcy court denied a motion for summary judgment where the movant sought dissolution and the affidavits and motion for summary judgment did not establish that the entity could not be operated in accordance with its operating agreement, but only that it had not been so operated in the past.

Defendants also argue that the disagreement between the Trustee and Mr. Parker does not amount to a deadlock. Defendants claim that there can be no deadlock where the business is operating in conformity with its intended purpose as expressed in the Articles of Organization. With respect to whether Mr. Parker's managerial decisions were *ultra vires*, the Defendants assert that the Trustee does not hold a 50% membership interest in the company by speculating that the non-filing spouse made more capital contributions to the LLC and therefore has a greater membership interest than the Trustee.

Even if a deadlock exists, the Defendants also argue that a deadlock alone is not enough to dissolve the LLC. Defendants maintain that the deadlock must be such that the intended purpose of the LLC is not being met because of the various deadlocks. In support thereof, Defendants cite *Kirksey v. Grohmann*, 754

5

N.W.2d 825, 2008 SD 76 (S.D. 2008), a case from the Supreme Court of South Dakota that addressed whether a business could function in a reasonably practicable manner, a standard similar to the judicial dissolution standard under Virginia law. In that case, the court ordered the dissolution of a deadlocked four-member LLC which had the purpose of engaging in a livestock and ranching operation where two of the members of the LLC were causing the deadlock and essentially held all the power in the entity. Those two members were party to a lease agreement for land owned by the LLC and the lease was extremely favorable to the two members because the rental rate was originally set when the land value was lower. In short, the lease had become burdensome and unbeneficial to the LLC and ultimately two of the members, but the other two members were benefiting personally from the low lease rate. The lease also contained a provision that automatically renewed the lease unless either party gave written notice of intent to terminate. When two of the members sought to vote to dissolve the LLC, the other two members blocked the vote, as the decision required a majority of the voting members. The LLC at issue had an operating agreement but the agreement did not provide a mechanism to break a deadlock or a tied vote. According to the Supreme Court of South Dakota, the question before it was not whether the business could continue despite the deadlock, but whether it could do so in a reasonably practicable manner in accordance with its operating agreement. The Supreme Court of South Dakota found that it could not observing:

> The company remains static, serving the interests of only half its owners. They neither trust nor cooperate with each other. The sisters formed their company contemplating equal ownership and management, yet only an impenetrable deadlock prevails.

*Kirksey v. Grohmann*, 2008 S.D. 76, ¶ 29, 754 N.W.2d 825, 831. Defendants assert that the case at bar does not contain the same features because it can operate in a lawful manner in accordance with its Articles of Organization. Defendants also cite *Dysaet v. Dragpipe Saloon*, LLC, 2019 S.D. 52, #28799 (S.D. Sep 04, 2019) for a similar proposition—that an LLC which can carry on business in accordance with its stated purpose and operating agreement should not be dissolved, even where members previously misappropriated distributions and where some members want to liquidate LLC property and others do not.

6

Defendants also argue that the Trustee merely wants to cash out now and that the Trustee's desire to do so does not justify dissolution. In support thereof, Defendants cite *Horning v. Horning Constr.*, 816 N.Y.S.2d 877 (N.Y. Sup. Ct. 2006). That case involved a three-member LLC that was not actually deadlocked, but instead involved one member who wanted to cash out and the other two that did not. In other words, majority decisions could still be made by the two members in power. There was no evidence before that Court that the entity at issue could not operate in a reasonably practicable manner in accordance with its stated purpose and operating agreement. Indeed, the entity at issue continued to "thrive in the ups and downs of the construction business." *Horning v. Horning Const., LLC*, 816 N.Y.S.2d at 884.

Finally, Defendants argue that the Trustee has failed to locate any bankruptcy court decision that ruled in favor of a chapter 7 trustee who sought dissolution of a multi-member LLC. Defendants characterize the Trustee's request for relief as trying to break new ground.

Analysis

Having reviewed the Trustee's and the Defendants' cited authorities, their arguments can be distilled to a disagreement over whether a deadlock exists, and whether that deadlock prevents the entity from carrying on its business in a reasonably practicable manner in conformity with its Articles of Organization.

The Court generally agrees with the propositions of the parties' cited authorities: that the reasonably practicable standard requires inquiry into present circumstances, and that any purported deadlock must be real and for it to justify dissolution, it must render the entity incapable of operating in a reasonably practicable way in accordance with its stated purpose. The Court finds the *Kirksey* case to be particularly informative. In that case decisions regarding the lease were not at issue because the lease was automatically renewed. However, there was an imbalance of power between the members which resulted in a deadlock. The *Kirksey* court ruled in favor of dissolution because two of the four partners maintained more control over the LLC than the two remaining members who favored dissolution. In this case, the deadlock places DGP in a more precarious managerial position because the rent increases are negotiated periodically, and renewals are offered and approved by only one of the members.

7

Case 22-01044-KHK   Doc 70   Filed 01/29/24   Entered 01/29/24 13:41:39   Desc Main
Document      Page 8 of 10

However, putting aside generally accepted principles and certain similarities between some of the cases and the case at bar, the cited authorities do not resolve the dispute in this case because none of the cases focus on whether the entity is making managerial decisions that violate the statute and none of the cases involve an analysis of whether a company is carrying on a business in a lawful manner, which is DGP's purpose. For example, while the principles springing from the *Dunbar* case *are* applicable, its holding is not applicable because we are not in a circumstance where a member has been expelled, and because we are in the context of a chapter 7 bankruptcy, it is not practical to expel Mr. Parker even if such relief were sought and obtained. In sum, the cited authorities and *Dunbar* in particular turned on their facts, and more specifically, the purpose of the applicable entity and the particulars underlying the deadlocks at issue. The same is true for this case.

The Court now turns to whether a deadlock exists, as the Trustee asserts, and whether it renders the entity incapable of operating in a reasonably practicable and lawful manner.

First, the Court finds that a deadlock does exist in this case. Virginia law makes clear that in the absence of an operating agreement, managerial decisions for LLCs require a majority vote of its members. Under the present circumstances, that means the Trustee (holding Ms. Parker's 50% interest on behalf of the estate) and Mr. Parker would need to both approve any managerial acts because neither alone could reach a majority vote. In other words, renewals require managerial decisions and managerial decisions require the Trustee's consent. While the Defendants have argued that Mr. Parker may have contributed more to the LLC and thereby increased his voting power, the Court disagrees because it has already ruled in its summary judgment orders that the Trustee's interest is 50%. Moreover, the Defendants, up until now, agreed that the interest was 50%. See Docket No. 16. No evidence has been presented to the contrary.

As previously noted, the record in this case establishes that Mr. Parker has engaged in post-petition managerial decisions on behalf of DGP without the consent of the Trustee. The evidence also establishes that Mr. Parker wants to continue DGP in its current form and does not want to sell the property while the Trustee seeks to dissolve the LLC due to Mr. Parker's misappropriation and *ultra vires* managerial decisions. While the Defendants argue that the disagreement between the parties does not amount to a

8

deadlock, the Court disagrees. No managerial actions can be taken with respect to the entity absent the Trustee's consent, which means not only has there been a deadlock in the past, but because of the Trustee's and the Defendants' diverging goals, there will continue to be a deadlock in the future. This means that the entity presumably will not be able to lawfully make decisions regarding lease renewals and increases in rent, among other matters that may need to be decided. It is not lawful for DGP to make decisions that violate applicable law—here, section 13.1-1022(C) of the Virginia Code. While the Defendants assert that it is improper to look to the Virginia statutes in these circumstances, the Court disagrees because even according to the Defendants themselves, the purpose of DGP is to "to conduct any business in a <u>lawful</u> manner" (emphasis added). Defendants' Brief, pgs. 11-12. Thus, the entity's purpose inherently requires the business to operate in accordance with applicable law, here the Virginia Code.

The Trustee has already been prevented from participating in decisions on lease renewals and rent increases, both of which are no doubt central to the operation of this particular business. Further, the Trustee seeks to dissolve the entity and the Defendants seek to continue DGP in its current state. But Defendants cannot legally do so under the statute because the entity cannot continue to make decisions without the Trustee's consent. Under these circumstances the Court finds that the deadlock prevents the LLC from carrying on its business in a reasonably practicable manner in conformity with its Articles of Organization, including its stated purpose of operating a business in a lawful manner. There is no need to parse whether it is reasonable or practicable because on the evidence before the Court, it is not even possible for DGP to function in a lawful manner without the Trustee's consent.

Accordingly, because the Court finds that a deadlock exists between the members of DGP that renders the entity unable to operate in a reasonably practicable and lawful manner, the Court finds that dissolution is the appropriate remedy under the statute. The Court notes that Defendants argue that the Trustee has failed to locate any bankruptcy court decision that ruled in favor of a chapter 7 trustee who sought dissolution of a multi-member LLC. Defendants characterize the Trustee's request for relief as trying to break new ground. The Court disagrees because it was able to locate at least one bankruptcy decision, from a case cited in the Defendants' Brief no less, that granted summary judgment on a complaint

9

seeking dissolution of a multi-member LLC. See *In re Klingerman*, No. 07-02455-5-ATS, 2009 WL 2423992, at *5 (Bankr. E.D.N.C. Aug. 4, 2009). The Court notes that the North Carolina Bankruptcy Court was not applying the same standard as is applicable in the case at bar, and that the main bankruptcy case from which the complaint seeking dissolution sprung was a chapter 11 case. The Court finds that the difference is immaterial for purposes of demonstrating that this relief is not as novel as the Defendants claim because at base the decision represents a final decision from a US Bankruptcy Court applying state law to dissolve an LLC.

## Conclusion

Therefore, based on the foregoing, the Court will enter judgment in favor of the Trustee on Count III of the Complaint, and within 21 days of the date of entry of this Memorandum Opinion will order that a liquidating trustee be appointed to dissolve DGP Holdings, LLC. The Office of the U.S. Trustee is hereby instructed to submit its recommendation for liquidating trustee.

A separate judgment and order will issue.

Date: Jan 29 2024

/s/ Klinette H Kindred
_____
Klinette H. Kindred
United States Bankruptcy Judge

Entered On Docket: Jan 29 2024

Electronic copies to:

*Janet M. Meiburger*
*Plaintiff's Counsel*

*Robert S. Brandt*
*Defendants' Counsel*

*Office of the U.S. Trustee*